ANNETTE L. HURST (State Bar No. 148738)
ahurst@orrick.com
ORRICK, HERRINGTON & SUTCLIFFE LLP
405 Howard Street
San Francisco, CA 94105-2669
Telephone: +1 415 773 5700
Facsimile: +1 415 773 5759

LAURI A. DAMRELL (State Bar No. 241010)
ldamrell@orrick.com
ORRICK, HERRINGTON & SUTCLIFFE LLP
400 Capitol Mall
Suite 3000
Sacramento, CA 95814-4497
Telephone: +1 916 447 9200
Facsimile: +1 916 329 4900

Attorneys for Plaintiff
Amelia Gilbert

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| Amelia Gilbert f/k/a Amelia Mann,<br><br>Plaintiff,<br><br>v.<br><br>Andrew Ryan King and Justin Pasternak,<br><br>Defendants. | Case No. 3:16-cv-06235<br><br>**COMPLAINT FOR DAMAGES**<br><br>**DEMAND FOR JURY TRIAL** |

## INTRODUCTION

1. Defendants Andrew Ryan King ("King") and Justin Pasternak ("Pasternak") sexually assaulted Amelia Gilbert (formerly known as Amelia Mann) ("Gilbert"), causing her significant physical and emotional harm. King and Pasternak had sexual intercourse with Gilbert without her consent, in Pasternak's case while she was unconscious. They left her battered and bruised from her time in their company. Their sexual assault derailed her graduate education and a promising career. Gilbert brings this lawsuit to seek vindication of her personal right of bodily integrity and to be compensated for the serious harm caused by King and Pasternak.

**JURISDICTION AND VENUE**

2. This is a Complaint for damages and other appropriate relief based upon Defendants' purposeful sexual assault and battery against Ms. Gilbert. In this action, Ms. Gilbert alleges: (1) assault under California common law; (2) battery under California common law; (3) sexual battery under California common law; and (4) intentional infliction of emotional distress under California common law.

3. This Court has subject matter jurisdiction over Ms. Gilbert's claims pursuant to 28 U.S.C. § 1332 (Diversity Jurisdiction). Ms. Gilbert resides in this judicial district and, upon information and belief, Defendant King resides in New York and Pasternak in Arizona. Ms. Gilbert seeks to recover damages in excess of $75,000, exclusive of interest and costs.

4. This Court has personal jurisdiction over Defendants, who committed intentional torts in this district with knowledge that the effects of their purposeful acts would be felt by Ms. Gilbert in this district.

5. Venue is proper in this Court pursuant to 28 U.S.C. § 1391(b)(2) because a substantial part of the events giving rise to Ms. Gilbert's claims occurred in this judicial district.

**THE PARTIES**

6. Plaintiff Amelia Gilbert resides in San Francisco, California. Ms. Gilbert was married, though estranged from her husband at the time the events described herein occurred, and was then known by her husband's surname as Amelia Mann. Upon her divorce, Ms. Gilbert resumed her birth surname of Gilbert.

7. On information and belief, defendant Andrew Ryan King resides in New York, New York, and at the time of the events described herein, was residing in San Francisco.

8. On information and belief, Justin Pasternak resides in Phoenix, Arizona, and at the time of the events described herein, was visiting defendant King in San Francisco.

**FACTUAL ALLEGATIONS COMMON TO ALL CLAIMS**

9. On or around the night of October 30, 2014, Ms. Gilbert joined her friend David Reez for dinner at a Thai restaurant and a concert at a club called The Mezzanine in the Mission District of San Francisco. At the time, Ms. Gilbert was pursuing dual Masters of Business

Administration and Masters of Public Policy degrees from the Tuck Business School at Dartmouth and the John F. Kennedy School of Government Harvard. Ms. Gilbert had graduated from the University of Washington with Bachelor of Arts degrees in Political Science and Communication in 2008, and had worked for Partnership for Public Service, the U.S. Department of Homeland Security, and had served as a Summer Fellow in Innovation at the U.S. Department of Labor. In short, Ms. Gilbert was experiencing a high degree of academic and career success.

10. In June 2014, Ms. Gilbert had finished the first year of her graduate studies, and she was living in San Francisco while serving as a Strategy and Planning intern at Facebook. It was a paid position, and Ms. Gilbert had every expectation of receiving an offer of full time employment from Facebook upon the conclusion of her internship.

11. October 30, 2014 was a Thursday. Ms. Gilbert and her friend ate dinner and proceeded to the Mezzanine for the concert. Ms. Gilbert expected to catch the 7 a.m. shuttle to Facebook's campus for work the next day, and moderated her intake of alcohol accordingly during dinner and at the club. She had no more than 2-3 drinks during an approximately two and one-half hour period, and was sufficiently accustomed to alcohol intake that she was not inebriated.

12. After having dinner, Ms. Gilbert and Mr. Reez arrived at the club around 9 p.m. and expected the main act to go on at 11. Around 10:30, she took a selfie and all seemed well. Ms. Gilbert was nursing a vodka tonic that she placed on a nearby table. The last thing she remembers of the evening was looking at her watch about fifteen minutes later and thinking that the main act should start in about fifteen minutes. She vaguely remembers seeing the man she later identified as Defendant Pasternak near her on the dance floor shortly prior to looking at her watch. After that, all is dark until approximately 5:00 a.m. on October 31, 2014, when Ms. Gilbert woke up in bed naked next to a stranger, Defendant Pasternak, bruised in various places over her body, her head aching horribly with a knot on her forehead, and terrified because she had no idea where she was or how she had gotten there.

13. Upon information and belief, Pasternak provided a statement to the San Francisco Police Department in which he admitted that he had sexual intercourse with Ms. Gilbert sometime during the night of October 30/morning of October 31. Ms. Gilbert never consented to that intercourse; indeed she was unconscious and incapable of doing so.

14. Frightened and disoriented, Ms. Gilbert got out of the bed occupied by the sleeping Pasternak and stumbled through the hallway to an unoccupied bedroom. She had little bodily control and was limited in her thinking. As she sat down in a chair in the second bedroom, she felt herself urinate: she couldn't control her bladder. She stumbled into the bed, loosened and pulled the covers over herself, and again fell unconscious.

15. Sometime soon thereafter Ms. Gilbert awoke to find another stranger—now known to her as Defendant King—raping her. Gilbert was still wet in places from urinating all over herself on the chair a short time earlier. King had placed his penis in her vagina from behind while she was unconscious. Gilbert woke up, but remained disoriented and frightened by her circumstances and what was happening to her. Her thought processes continued to be muddled and she was unable to get away from King. Gilbert is 5' 4" tall and approximately 120 pounds, while King was much larger and stronger.

16. Gilbert did not consent to intercourse with King, a man whom to her knowledge she had never even seen before that waking moment. Indeed, King later admitted that he had no idea who Gilbert was and did not know that she had entered the apartment with his friend Pasternak. Nonetheless, King apparently thought it was just fine to happen upon a naked unconscious stranger and begin having sexual intercourse with her. After efforts to move away from him in the bed, King continued raping Gilbert, repeatedly donning condoms because of the lack of lubrication. Gilbert stimulated King to climax manually in order to get him to stop hurting her.

17. Upon information and belief, Defendant King provided a statement to the San Francisco Police Department in which he admitted having sexual intercourse with Ms. Gilbert.

18. Ms. Gilbert was unable for some time after that to stand up or flee. She was forced to ask King where her clothes were, and if he could help her find them. Ms. Gilbert waited in the bedroom while King went into the other room to look for her clothes. He returned with her underwear, bra, jeans and clutch purse, but did not bring back her shirt. Ms. Gilbert wondered where it was, and asked King if he could go back and look for it again. From the other room, Ms. Gilbert heard Pasternak holler that she "wasn't wearing a shirt" when he brought her to his apartment the night before. But she had gone out the night before wearing a mint-green top, jeans, and a jacket, carrying a small clutch purse with her cell phone. Her shirt and jacket were missing. She had trouble understanding what had happened and no recollection of the night before. Ms. Gilbert pretended nothing was wrong in order to extract herself from the situation safely. She conversed as casually as possible with King about himself and the man in the other room in an effort to identify them and rescue herself. Eventually, King provided a castoff t-shirt for Ms. Gilbert to wear home.

19. Once in possession of her phone and some clothing, Ms. Gilbert called for an Uber car to take her home, where she again fell unconscious for several hours. Upon waking around noon, still disoriented, she again noticed the bruises and pain all over her body. She again began to understand that something truly terrible had happened to her. She called a friend, who took her to the hospital. At San Francisco General, a rape kit was administered, and Ms. Gilbert was diagnosed with a concussion.

20. As a result of Defendants' conduct, Ms. Gilbert suffered pain and physical injuries such as bruising, welts, vaginal pain, goose eggs, and a concussion, combined with emotional trauma that caused her, for several months after the attacks, to sleep roughly 22 hours per day. Her concussion symptoms persisted for six months and resurface occasionally today.

21. As a result of Defendants' conduct, Ms. Gilbert suffered severe mental and emotional distress. Her doctors prescribed antiretroviral drugs out of concern that she had been exposed to HIV. She developed crippling anxiety, which she manages through medication and an intensive course of therapy with trauma therapists.

22. As a result of Defendants' conduct, Ms. Gilbert found her anxiety and lingering concussion symptoms socially disabling, and she was unable to attend classes in person when she returned to Dartmouth. She pushed herself to stay on and complete as many assignments as possible. In spite of her best efforts, she was not able to pass many of her courses. She has not yet been able to finish her advanced degrees, and will have to complete additional independent study over the next two years in order to earn the degrees. She was unable to return to her internship at Facebook. After years of job success, she has been living on unemployment and unable to hold down a full-time job. Only recently has she finally begun to feel more like herself.

23. Ms. Gilbert's damages for physical, mental, and emotional pain and suffering, lost economic opportunities from derailing her education and her career, and out-of-pocket economic losses such as medical bills, therapy bills and lost wages, are well in excess of $75,000.

## FIRST CLAIM FOR RELIEF

(Assault against Defendant King)

24. Ms. Gilbert incorporates herein the allegations set forth in paragraphs 1-23 of this Complaint.

25. While having sexual intercourse with her without her consent, and continuing to pursue that intercourse despite a lack of consent and an obvious physical lack of interest on her part, Defendant King caused Ms. Gilbert to believe that she would be touched in a harmful and offensive manner and placed her in immediate fear of severe bodily harm or even death.

26. King caused Ms. Gilbert physical and emotional harm.

27. King's acts constitute assault under California common law.

28. Ms. Gilbert suffered damages as a result of King's conduct, including, but not limited to out-of-pocket expenses, lost wages, and emotional distress in an amount according to proof.

29. King's conduct toward Gilbert was oppressive in that it reflected a wanton disregard for her bodily and emotional integrity, justifying an award of exemplary damages designed to punish and deter further acts of this type.

**SECOND CLAIM FOR RELIEF**

(Battery against Defendants Pasternak and King)

30. Ms. Gilbert incorporates herein the allegations set forth in paragraphs 1-29 of this Complaint.

31. Defendants Pasternak and King knowingly had sexual intercourse with and injured Ms. Gilbert, and did so without her consent.

32. The acts of Defendants Pasternak and King constitute battery under California common law.

33. Ms. Gilbert was physically and emotionally harmed by Defendants, as described herein.

34. Ms. Gilbert suffered damages as a result of Defendants' battery, as described herein.

35. Pasternak and King acted oppressively toward Gilbert by raping her with a wanton disregard for her bodily and emotional integrity, justifying an award of exemplary damages designed to punish and deter further acts of this type.

**THIRD CLAIM FOR RELIEF**

(Sexual Battery against Pasternak and King)

36. Ms. Gilbert incorporates herein the allegations set forth in paragraphs 1-35 of this Complaint.

37. Defendants Pasternak and King knowingly had sexual intercourse with Ms. Gilbert and did so without her consent.

38. The acts of Defendants constitute sexual battery under California common law.

39. Ms. Gilbert suffered damages as a result of Defendants' battery, as described herein.

40. Pasternak and King acted oppressively toward Gilbert by raping her with a wanton disregard for her bodily and emotional integrity, justifying an award of exemplary damages designed to punish and deter further acts of this type.

**FOURTH CLAIM FOR RELIEF**

(Intentional Infliction of Emotional Distress against King and Pasternak)

41. Ms. Gilbert incorporates herein the allegations set forth in paragraphs 1-40 of this Complaint.

42. Defendants King and Pasternak raped and injured Ms. Gilbert, causing her severe mental and emotional distress as described herein.

43. Each of the Defendants' conduct was a substantial factor in causing Ms. Gilbert's harm.

44. Ms. Gilbert suffered damages as a result, including, but not limited to, post-traumatic stress disorder, crippling anxiety, lost wages, and out of pocket costs for therapy and anxiety medication.

45. Pasternak and King acted oppressively toward Gilbert by raping her with a wanton disregard for her bodily and emotional integrity, justifying an award of exemplary damages designed to punish and deter further acts of this type.

**PRAYER FOR RELIEF**

WHEREFORE, Ms. Gilbert respectfully requests that the Court enter judgment against Defendants Pasternak and King as follows:

1. That the Court award Ms. Gilbert damages caused by Defendants' unlawful actions in an amount according to proof;

2. That the Court enter an award of punitive damages as provided by law; and

3. That the Court grant Ms. Gilbert all other relief to which she is entitled and such other or additional relief as is just and proper.

Dated: October 27, 2016

ORRICK, HERRINGTON & SUTCLIFFE LLP

By: */s/ Annette L. Hurst*
ANNETTE L. HURST

Attorneys for Plaintiff
Amelia Gilbert

**DEMAND FOR JURY TRIAL**

Plaintiff Ms. Gilbert hereby demands a trial by jury in this action.

Dated: October 27, 2016

ORRICK, HERRINGTON & SUTCLIFFE LLP

By: */s/ Annette L. Hurst*
ANNETTE L. HURST

Attorneys for Plaintiff
Amelia Gilbert