UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| AMELIA GILBERT,<br><br>    Plaintiff,<br><br>v.<br><br>ANDREW RYAN KING, et al.,<br><br>    Defendants. | Case No. 16-cv-06235-JCS<br><br>**ORDER RE MOTIONS IN LIMINE AND DAUBERT MOTIONS**<br><br>Re: Dkt. Nos. 95, 100, 102, 104, 115, 117, 118, 122, 123, 124, 125, 158, 161 |

## I. INTRODUCTION

On Friday, February 23, 2018, the Court conducted a pretrial conference in this action. The Court's rulings on the parties' motions in limine and *Daubert* motions are set forth below. The Court stated the reasons for these rulings at the pretrial conference, on the record.[1]

## II. MOTIONS IN LIMINE

### A. Plaintiff's Motions in Limine

#### 1. Plaintiff's MIL No. 1 (to excluded evidence regarding Plaintiff's sexual behavior or predisposition)

Plaintiff's Motion is GRANTED. Defendants may not offer evidence or argument at trial regarding Ms. Gilbert's sexual behavior or predisposition, other than evidence regarding her encounters with Defendants on the night of October 30, 2014 and the morning of October 31, 2014. If Plaintiff introduces evidence or testimony on that subject at trial, Defendants may be permitted to rebut that evidence or testimony but shall seek leave of the Court and make an offer of proof, outside of the presence of the jury, before offering such rebuttal evidence or making any

---

[1] The parties have consented to the jurisdiction of the undersigned magistrate judge pursuant to 28 U.S.C. § 636(c).

arguments related to that rebuttal evidence.

**2. Plaintiff's MIL No. 2 (to exclude evidence of certain statements Plaintiff made regarding her mother)**

Plaintiff's Motion is GRANTED. Defendants may not introduce evidence reflecting the specific comments in Ms. Gilbert's medical records that are the subject of the Motion. Nor may they ask Ms. Gilbert at trial if she made these specific comments. The Court's ruling does not otherwise preclude Defendants from introducing evidence of emotional distress experienced by Ms. Gilbert associated with her relationship with her mother.

**3. Plaintiff's MIL No. 3 (to exclude certain colloquial statements by Plaintiff regarding her mental health)**

Plaintiff's Motion is DENIED.

**4. Plaintiff's MIL No. 4 (to exclude certain evidence regarding the criminal investigation)**

Plaintiff's Motion is GRANTED. Defendants shall not introduce evidence or argument regarding a decision or recommendation not to prosecute them. The Court declines Defendants' request to exclude *all* evidence related to the criminal investigation. Rather, when evidence relating to the criminal investigation is first introduced at trial, the Court will instruct the jury that they are not to speculate about the outcome of the criminal investigation.

**B. Defendants' Motions in Limine**

**1. Defendants' MIL No. 1 (to exclude past sexual history and drug use)**

Defendants' Motion is GRANTED as to Defendants' sexual history. Plaintiff shall not introduce evidence or arguments related to prior sexual conduct. If Defendants open the door to such evidence by offering testimony about their prior sexual conduct, Plaintiff may be permitted to rebut that testimony but shall seek leave of the Court and make an offer of proof, outside of the presence of the jury, before offering such rebuttal evidence or making any arguments related to that rebuttal evidence.

With respect to prior alcohol use, the Motion is GRANTED to the extent that Plaintiff may not introduce specific evidence relating to Defendants' history of alcohol use. Plaintiff may, however, seek to elicit general testimony relating to Defendants' alcohol tolerance.

### 2. Defendants' MIL No. 2 (to exclude testimony, evidence, comment or argument re King's communications protected by the attorney-client privilege)

The Court reserves decision on this motion which will be decided at a later date.

### 3. Defendants' MIL No. 3 (to exclude testimony regarding Defendant Pasternak's alleged failure to cooperate with the criminal investigation)

Defendants' Motion is GRANTED.

### 4. Defendants' MIL No. 4 (to exclude improper rebuttal of expert Richard Rubenstein)

Defendants' Motion is GRANTED in part and DENIED in part. The Court finds that Dr. Rubenstein's opinions that relate to *observable* manifestations of concussion (e.g., "confusion," "disorientation," and impairment of "judgment, cognitive flexibility and attentional mechanisms") are directly relevant and rebut Dr. Benowitz's opinion that Plaintiff was likely acting "normally" and therefore "could have apparently willingly participated in sexual intercourse." Consequently, testimony on that subject is within the scope of rebuttal and may be introduced at trial. Likewise, Dr. Rubenstein's opinion that Plaintiff's longer-term symptoms are likely due to psychological trauma rather than the remote effects of a concussion relate directly to and rebut Dr. Leahy's opinion that Plaintiff's complaints of depression, anxiety and panic attacks (among other things) are the result of her post-concussive syndrome rather than psychological trauma resulting from the alleged rapes. Therefore, these opinions also are within the scope of rebuttal and may be introduced at trial.

On the other hand, Dr. Benowitz also offers opinions that Plaintiff did not and could not have consented to sexual activity because of concussion. As Plaintiff acknowledges, her "case in chief will establish that Ms. Gilbert did not consent to sexual activity." Opposition to MIL No. 4 at 4. Dr. Rubenstein's opinion directly stating that Plaintiff "would have been incapable of giving consent" therefore is not a rebuttal opinion but one that should have been disclosed when initial experts were disclosed. Consequently, Dr. Rubenstein may not offer opinions that Plaintiff was unable to consent to sexual relations because of the concussion. Moreover, any opinions about the short-term impact of the concussion that are not closely related to physical manifestations that would have been observable to Defendants will be excluded on the basis that they exceed the

3

1  scope of rebuttal.

### 5. Defendants' MIL No. 5 (to exclude evidence and testimony about Plaintiff's medical special damages which were billed and limiting Plaintiff's medical special damages to the amount which was paid)

Defendants' Motion is GRANTED in part. Plaintiff may not introduce evidence of unadjusted amounts of past medical bills where Plaintiff has already paid a lower (adjusted) amount. Plaintiff may, however, introduce evidence of medical bills that have not yet been paid at the time of trial and are actually owed by Plaintiff.

## III. DAUBERT MOTIONS

### A. Defendants' Daubert Motions

#### 1. Motion to Exclude Matto Rebuttal Opinion

The Motion is DENIED.

#### 2. Motions to Exclude Rubenstein Opinions

Except as stated above, with respect to Defendants' Motion in Limine No. 4, Defendants' Motion is DENIED.

### B. Plaintiff's Daubert Motions

#### 1. Motion to Exclude Benowitz Opinions

The Motion is DENIED.

#### 2. Motion to Exclude Kim Testimony

Plaintiff's Motion is GRANTED in part and DENIED in part.

First, to the extent that Dr. Kim opines that Plaintiff's MMPI-2 results are "uninterpretable," it is evident that Dr. Kim did not follow the accepted methodology for interpreting the MMPI-2. An uninterpretable result is one where a test-taker has offered inconsistent responses, as reflected by high VIN and TRIN Scores. Dr. Kim did not offer any explanation for concluding that Plaintiff's result was uninterpretable and in particular, did not address Plaintiff's normal VIN and TRIN scores. Under the official guidance for interpreting the MMPI-2, Dr. Kim was required to consider these scores to determine if Plaintiff's FBS score was uninterpretable. The fact that she did not do so renders her opinion that the FBS score is "uninterpretable" unreliable under Rule 702.

Second, Dr. Kim's opinion that the FBS score was invalid due to exaggeration of symptoms also is not based on a reliable methodology. Dr. Kim's opinion, according to her own declaration, was based on her belief that "[i]f the Validity T-score is above 60, the protocol cannot be read and would be considered invalid." Kim Decl. ¶ 8. Applying this approach, Dr. Kim concluded that because Plaintiff's FBS T-score was 84, her results automatically rendered Plaintiff's profile invalid and reflected that Plaintiff was over-reporting her symptoms. The authoritative interpretive guidance makes clear, however, that a score between 80 and 99 requires additional analysis to determine whether a test taker is over-reporting because over-reporting is only a "*possible*" explanation of an elevated FBS score in this range.

To determine whether Plaintiff was over-reporting, Dr. Kim was required to conduct an additional step in which she ruled out the possibility that Plaintiff's high FBS score was the result of "credible reporting" of symptoms related to significant or multiple medical conditions. Dr. Kim testified unequivocally at her deposition that she did not conduct this step and indeed, that she did not have sufficient information to determine whether Plaintiff's responses could be the result of her post-concussive syndrome. Dr. Kim did not dispute that Plaintiff may suffer from post-concussive syndrome and Dr. Margot Leahy, another expert retained by Defendants, agrees with Dr. Raffle that she does. *See* Duffy Decl. (Docket No. 101-5), Ex. B (Leahy Report) at 10; Crane Decl. (Docket No. 119-1), Ex. G (Raffle Report) at 25. Having failed to make any attempt to conduct the analysis required to reliably interpret a T-score in this range, Dr. Kim's opinion that Plaintiff's FBS score indicates that Plaintiff is exaggerating her symptoms does not satisfy the requirements of Rule 702 and *Daubert*. Dr. Kim therefore may not offer any opinion based (either directly or indirectly) on her interpretation of Plaintiff's FBS score on the MMPI-2. Nor may any other expert offer opinions that are based upon Dr. Kim's unreliable opinions.

The Court finds that at least two specific opinions offered by Dr. Kim are tainted by her interpretation of the FBS score. First, the Court finds that Dr. Kim's conclusions regarding the results of the Clinician-Administered PTSD Scale (the so-called "CAPS 5") are tainted by her interpretation Plaintiff's FBS score. The Clinician-Administered PTSD Scale is an orally administered test for assessing whether an individual has PTSD. Id. at 61. Dr. Kim testified at

her deposition that in conducting the Clinician-Administered PTSD Scale, she took into account her assessment of the MMPI-2 results, namely, that Plaintiff was exaggerating her symptoms. Duffy Decl., Ex. B (Kim Dep.) at 61. Therefore, Dr. Kim also may not offer opinions regarding the results she obtained on the CAPS-5. Nor may any other expert rely upon it.

Similarly, Dr. Kim's opinion that Plaintiff's prognosis is "guarded" – an opinion she expressed for the first time in her deposition – is also tainted. Dr. Kim testified at her deposition that the reason she had revised her prognosis from "good" to "guarded" was that Plaintiff has "a lot riding on this" trial in terms of her credibility. Duffy Decl., Ex. B (Kim Dep.) at 64. She further testified that this opinion was offered in her capacity as an expert and was "based on testing, especially MMPI." *Id.* Therefore, Dr. Kim may not offer this opinion at trial. Nor may any other expert rely upon it.

On the other hand, Dr. Kim's opinion regarding Plaintiff's PTSD scale on the MMPI-2 does not appear to be tainted by her interpretation of the FBS score. In particular, Dr. Kim testified at her deposition that *even if* Plaintiff were exaggerating her symptoms, she would expect to see an elevated PTSD scale if Plaintiff truly has PTSD, but Plaintiff's PTSD scale is not elevated. *Id*. at 61. As this opinion appears to be unrelated to Plaintiff's FBS score, Dr. Kim may offer opinions about Plaintiff's score on the MMPI-2 with respect to the PTSD scale

### 3. Motion to Exclude Leahy Testimony

Plaintiff's Motion is GRANTED.

The Clinical Impression section of Dr. Leahy's report includes two parts. The first describes Plaintiff's symptoms and diagnoses. Leahy Report at 14-15 (first paragraph of "Clinical Impression" section). The second part addresses Dr. Leahy's opinions as to what likely happened on the night of October 30 and the morning of October 31, 2014. Leahy Report at 15-16 (second paragraph of "Clinical Impression" section).

With respect to the first part of Dr. Leahy's Clinical Impression, which addresses, *inter alia*, whether Plaintiff has PTSD, Dr. Leahy may not offer opinions based on Dr. Kim's results on the CAPS-5 for the reasons discussed above. The Court also excludes all of the opinions contained in the second part of Dr. Leahy's Clinical Impression, addressing what Dr. Leahy

believes occurred on the night of October 30 and the morning of October 31, 2014, for several reasons. First, Dr. Leahy relies heavily on Dr. Kim's (unreliable) opinion, based on the MMPI-2, that Plaintiff was exaggerating her symptoms. Second, Dr. Leahy's opinions are based, in part, on sexual stereotypes about individuals in their twenties and is in violation of Rule 412(a)(2) of the Federal Rules of Evidence, which prohibits the introduction of "evidence offered to prove a victim's sexual predisposition." Finally, Dr. Leahy's opinions about what happened on the night of October 30 and the morning of October 31, 2014 are more prejudicial than probative under Rule 403. Dr. Leahy's opinions about what occurred on the night of October 30 and the morning of October 31, 2014 are therefore excluded in their entirety.

**IT IS SO ORDERED.**

Dated: February 26, 2018

JOSEPH C. SPERO
Chief Magistrate Judge